# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.C.**

**No. 20-0016** (Randolph County 19-JA-3)

**FILED**

**June 25, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother L.C., by counsel J. Brent Easton, appeals the Circuit Court of Randolph County's December 5, 2019, order terminating her parental rights to J.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period and terminating her parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2019, the DHHR filed an abuse and neglect petition against petitioner and the father alleging that they abused methamphetamine and Suboxone in the child's presence, failed to supervise the child, and maintained a filthy and unsafe home. The DHHR also alleged that the parents trafficked drugs resulting in many known drug users frequenting the home. Further, the parents admitted using Suboxone for the previous seven years and methamphetamine for the previous year. Petitioner also admitted to smoking methamphetamine two to three times a week. Lastly, the parents tested positive for methamphetamine and Suboxone in January of 2019. Thereafter, the circuit court held an adjudicatory hearing in March of 2019, wherein petitioner stipulated to the allegations contained in the petition. The circuit court accepted the stipulation,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

adjudicated petitioner as an abusing parent, and granted her a post-adjudicatory improvement period, the terms of which included participation in regular drug screening, parenting and adult life skills classes, and supervised visitations.

Review hearings were held in April and June of 2019. Petitioner tested positive for methamphetamine in mid-June of 2019, which was the first screen submitted since early May of 2019. Further, petitioner was inconsistent with supervised visitations and did not fully participate in her adult life skills classes and parenting sessions. During the June hearing, petitioner advised that she had an appointment with a local substance abuse clinic to receive a Vivitrol shot, and the circuit court allowed her improvement period to continue for another forty-five days. In July of 2019, petitioner was arrested and incarcerated for misdemeanor charges for possession of methamphetamine. By August of 2019, the DHHR moved to terminate petitioner's improvement period based upon her lack of compliance with its terms and conditions. Although petitioner was incarcerated, she argued that she would attend inpatient substance abuse treatment upon her release. The circuit court concluded that petitioner had not successfully completed her improvement period and set the matter for disposition. At a status hearing in September of 2019, it was confirmed that petitioner was attending an inpatient drug rehabilitation program.

The circuit court held the final dispositional hearing in November of 2019. Petitioner moved for a post-dispositional improvement period, but the DHHR and guardian objected. In support of her motion for an improvement period, petitioner presented a discharge summary from an inpatient drug rehabilitation program she entered around September of 2019, but the summary reported that she used methamphetamine during her stay and that she attempted to defeat drug screens. The DHHR moved for the termination of petitioner's parental rights and presented evidence that she had not complied with the terms and conditions of her post-adjudicatory improvement period. The DHHR argued that petitioner made misrepresentations about her drug abuse at the multidisciplinary team meeting in early November of 2019. Having heard the evidence, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the child's welfare. The circuit court terminated petitioner's parental rights by its December 5, 2019, order.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided

---

[2]According to the DHHR, the father is participating in an improvement period and trial reunification with the child. The permanency plan is for the child to remain in the care of the father.

the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her request for a post-dispositional improvement period. In support, petitioner argues that she "showed potential through her post-adjudicatory improvement period and testified that she would fully participate" in another improvement period. We find that petitioner is entitled to no relief in this regard.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Pursuant to West Virginia Code § 49-4-610(3)(D), a circuit court may grant a post-dispositional improvement period when,

> [s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period[.]

Here, petitioner was granted a post-adjudicatory improvement period but failed to demonstrate that she experienced a substantial change in circumstances or that she was likely to fully participate in another improvement period. The record shows that petitioner's compliance with supervised visitation and adult life skills and parenting classes was inconsistent. The record further demonstrates that petitioner tested positive for methamphetamine several times throughout the proceedings, including during her stay at a drug rehabilitation facility shortly before the dispositional hearing. The circuit court, having learned of petitioner's noncompliance with the terms and conditions of her post-adjudicatory improvement period, reasonably believed that she was unlikely to comply with another improvement period. We have held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . . ." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part. The circuit court was not required to wait and see if petitioner would finally address her severe substance addiction. As we have previously noted,

> [w]e have repeatedly emphasized that children have a right to resolution of their life situations, to a basic level of nurturance, protection, and security, and to a permanent placement. The legislature has recognized this by limiting the extent and duration of improvement periods a court may grant in an abuse and neglect case.

3

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 257-58, 470 S.E.2d 205, 211-12 (1996). Based on the foregoing, we find no error in the circuit court's denial of petitioner's post-dispositional improvement period.

Petitioner next argues that the circuit court erred in terminating her parental rights without imposing a less-restrictive dispositional alternative. We find that petitioner is entitled to no relief. West Virginia Code § 49-4-604(b)(6) (2019)[3] permits a circuit court to terminate parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. Further, pursuant to West Virginia Code § 49-4-604(c)(3) (2019), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." Here, the record supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect given her untreated addiction and noncompliance throughout the proceedings. Below, petitioner stipulated that her drug addiction negatively impacted her ability to parent the child. However, she failed to comply with drug testing and continued to test positive for methamphetamine. At a disposition hearing in November of 2019, the DHHR presented evidence that as recently as September of 2019, petitioner tested positive for methamphetamine and attempted to defeat drug screening at the drug rehabilitation facility. Clearly, petitioner failed to respond to any rehabilitative efforts required by her improvement period. Additionally, the record shows that the child's welfare required termination of petitioner's parental rights, as there was evidence that her untreated substance abuse prevented her from properly parenting and supervising the child. Therefore, sufficient evidence was presented to find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future and that termination of petitioner's parental rights was necessary for the child's welfare.

In regard to petitioner's assertion that she may eventually be able to correct the conditions of abuse and neglect, we note that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the circuit court properly found there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and termination of petitioner's parental rights was necessary for the

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

child's welfare, we find no error in the circuit court's decision to terminate petitioner's parental rights.

Lastly, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6) (2019)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 5, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison